IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CARLON D. McGINN,**

        **Petitioner,**

    **v.**                                **CASE NO. 12-3131-RDR**

**JAMES HEIMGARDNER,**

        **Respondent.**

### MEMORANDUM AND ORDER

The court previously screened this petition for writ of habeas corpus and ordered Mr. McGinn, a state prisoner, to satisfy the filing fee. He was also ordered to submit his petition upon the appropriate forms and show cause why this action should not be dismissed due to his failure to exhaust state remedies, procedural default in state court, and failure to file this federal application within the statute of limitations. Mr. McGinn has paid the filing fee and submitted his petition upon court-approved forms for filing a habeas petition pursuant to 28 U.S.C. § 2254 as required. The court has thoroughly reviewed the new petition and its attached exhibits together with filings in his Kansas collateral proceedings and a relevant Colorado state court opinion available on-line. In 2001 Mr. McGinn committed criminal offenses in Colorado, then committed serious offenses in Kansas, and finally committed more offenses and violated his probation in Colorado. His allegations and exhibits

do not present a clear chronology of his various state prosecutions and custody changes. However, the court is not compelled to expand the record to develop a complete chronology because the only crucial issue at this juncture is whether or not he has established that he is entitled to equitable tolling. The court has no difficulty concluding from the record presently before it that he has not. Accordingly, this action is dismissed as time-barred.

**FACTUAL BACKGROUND**

The factual background begins with Mr. McGinn in custody in Adams County, Colorado in connection with theft and burglary charges in Case No. 01 CR 448. Then in May 2001, Mr. McGinn was charged in Sedgwick County, Kansas with one count of rape of a child under 14 years of age and one count of aggravated criminal sodomy. On June 25, 2001, the Sedgwick County Sheriff's Department faxed a request to petitioner's Colorado custodian to place a hold on him for extradition on the Kansas charges; and on July 6, 2001, the Adams County Sheriff's Department complied. In July, August and September 2001, reviews of the extradition request and "Gov. Warrant" were conducted in Adams County, and petitioner was held for extradition in addition to the Colorado charges. On August 9, 2001, Mr. McGinn was sentenced to probation for 4 years in Colorado Case No. 01 CR 448 upon his plea of guilty to the theft charge. At the September 2001 "Fugitive from Justice" type "extradition hearing" in the Adams

2

County District Court (Case. No. 01 CR 1500), the extradition case was dismissed on petitioner's request with Mr. McGinn and his counsel present because "Governor's Warrant has not been received from Kansas." Petition (Doc. 3) Exh. H. Mr. McGinn was released from the Colorado county jail on probation on September 13, 2001. Within days, he apparently committed new offenses in Colorado and was arrested in Adams County for probation violation in Case No. 01 CR 448. Petitioner's Exhibit M indicates that on February 26, 2002, he was sentenced to a three-year Colorado prison term on charges including theft and assault in case No. 01 CR 2183.[1] On March 14, 2002, his probation in Case 01 CR 448 was revoked, and he was sentenced to the Colorado Department of Corrections for three years to run concurrent to his sentence in Case 01 CR 2183.

Mr. McGinn does not provide details as to what happened next or over the subsequent 7 months with respect to his Kansas charges. He alleges that on March 22, 2002, he was picked up by the State of Kansas and exhibits an affidavit from the Records Supervisor at the Adams County Detention Facility to that effect (Exh. M). However, he does not describe any events that occurred in Kansas between then and when he was "arrested" on the Kansas charges, which he alleges was not until October 30, 2002. He exhibits a printout he obtained

---

[1] On December 18, 2001, he was convicted of felony menacing pursuant to his guilty plea in the Adams County District Court and was sentenced to a three-year prison term in the Colorado Department of Corrections. See *McGinn v. Colorado*, 2010 WL 4318564, *1 (D.Colo. Oct. 25, 2010). It is not clear if this was in addition to or part of the theft and assault charges in Case No. 01 CR 2183.

3

in 2009 that does not indicate its origin or a case number. It lists Complaint/Information" and "warrant issued" next to March 28, 2001 and "Warrant Retd" and "Arrested" next to October 30, 2002.[2]

On the other hand, the record plainly shows the following events. On March 25, 2003, Mr. McGinn pled guilty to the Kansas charges; and on May 22, 2003, he was sentenced to 554 months on the rape conviction and 109 months on the aggravated criminal sodomy conviction. *See McGinn v. Kansas*, 259 P.3d 749, 2011 WL 43578109, *1 (Kan.App., Sept. 16, 2011), rev. denied (Kan. Mar. 8, 2012). Mr. McGinn did not appeal his Kansas convictions or sentences. He was returned to Colorado to complete service of his Colorado sentence(s). He "was paroled on his Colorado conviction sometime prior to July 19, 2004." *McGinn v. Colorado*, 2010 WL 4318564 at *1. On July 19 or 20, 2004, Mr. McGinn "was moved to a Kansas detention facility . . . pursuant to an outstanding Kansas detainer," where he began serving his Kansas sentences. *Id.*

On October 14, 2009, more than 6 years after he was sentenced

---

2   Allegations different from those in the petition were made in Mr. McGinn's Brief for Appellant filed in the KCA during collateral proceedings. There, it was stated that Kansas lodged a detainer that was served on Mr. McGinn on April 30, 2002, while he was in the custody of the Colorado DOC, which he "refused to sign and request Final Disposition." *McGinn v. Kansas*, 2010 WL 4923655 (KCA Appellate Brief) Brief for Appellant (Nov. 3, 2010). It was also stated that on August 8, 2002, he asserted his right for speedy disposition of the Kansas charges and on August 20, "the Detainer Operations Supervisor of the Colorado Department of Corrections sent a letter to the Sedgwick County District Attorney," which was filed along with "the accompanying paperwork" in the Sedgwick County District Court on September 6, 2002. In addition, it was stated that on October 15, 2002, the State of Kansas sent the Colorado DOC an "Acceptance of Temporary Custody Notice;" McGinn was returned to Kansas; and on October 31 the Sedgwick County District Court conducted a first appearance and a preliminary hearing. McGinn was bound over for trial and a jury trial was scheduled.

4

in Kansas and 5 years after he was taken into Kansas custody to serve his Kansas sentences, Mr. McGinn filed a petition pursuant to K.S.A. 60-1507. The state district court appointed counsel to represent him. Petitioner claimed that the State of Kansas had no jurisdiction over him at the time of his plea because there was a violation of the federal and the Kansas Interstate Agreement on Detainers Acts (IADA), and that trial counsel was ineffective for failing to inform him of it. The Kansas district court held a preliminary hearing and denied his petition as untimely under the one-year limitations period in K.S.A. 60-1507(f)(1). *McGinn v. Kansas*, 259 P.3d 749 at *1-*2. McGinn appealed to the KCA, where he argued that his 60-1507 petition should have been construed as a motion to withdraw his guilty plea, and should not have been summarily denied. *Id.* The KCA affirmed, finding that Mr. McGinn had not explained why he failed to file his 60-1507 petition in a timely manner, and had not raised the issue of construing his motion as one to withdraw plea before the district court. The Kansas Supreme Court denied review on March 8, 2012.

**PETITION IS TIME-BARRED**

In its prior Order, the court found that Mr. McGinn's Kansas convictions challenged in this petition became "final" as that term is used in 28 U.S.C. § 2244(d)(1) in 2003. More precisely, since he was sentenced on May 22, 2003, and under Kansas law a defendant in 2003 had 10 days after judgment to appeal, petitioner's

5

convictions became final on June 1, 2003. *See* K.S.A. § 22-3608(a),(c). It follows that Mr. McGinn had until June 1, 2004, to file his application for federal habeas corpus relief challenging his Kansas convictions. As petitioner was informed in the court's prior order, if he did not present facts in his new petition indicating that the statute of limitations in this case was tolled between June 1, 2003 and June 1, 2004, either by statute or by equitable tolling, this action is time-barred.

Petitioner presents no facts to show his entitlement to additional statutory tolling. His 60-1507 motion filed in 2009 had no tolling effect because it was filed years after the limitations period had already expired. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

In the court's prior order, petitioner was advised of the standards regarding equitable tolling and that it is available only "in rare and exceptional circumstances." Petitioner argues that he is entitled to equitable tolling on several grounds, all of which are little more than rearguments of his underlying claims that a violation of the IADA occurred that resulted in the trial court having no jurisdiction. The grounds he asserts are that: he was not aware until June 2009 that no governor's warrant had been issued by Kansas and that there was an IADA violation; his appointed counsel in Colorado knew of the Kansas charges and "requested to extradite petitioner to Kansas" but hid from him that no governor's warrant

6

existed and there was an IADA violation; he entered his plea based on advice of counsel that the plea agreement was lawful but the court lacked jurisdiction due to the IADA violation; his appointed attorneys in Colorado and Kansas, the prosecutor, and the Kansas trial court knew of the IADA violation and the court's lack of jurisdiction, "but all of them hid this fact" from him. He contends that the failure to present his claims in state and federal court in a timely manner was due not to his own negligence or lack of diligence, but to the negligence of his Colorado and Kansas counsel, the prosecutor, and the court in suppressing information and "documentation indisputably proving the (IADA) violation" in order to secure his illegal conviction. Petitioner also claims that the state actors in this case from Colorado and Kansas acted deliberately, feloniously, and in concert to keep the IADA violation information out of the record in order to prevent him from timely filing his 60-1507 motion and this federal petition.

The court finds that these allegations fall far short of establishing Mr. McGinn's entitlement to equitable tolling for several reasons. First, petitioner's allegations and exhibits are not sufficient to "indisputably" establish any violation of the IADA. Second, petitioner's allegations that his appointed counsel, the prosecution, and the trial court knew of an IADA violation and intentionally withheld that information from him are nothing more than conclusory statements or speculation, particularly in light of

7

the court's prior finding. Third, there are indications in the record that Mr. McGinn was or should have been cognizant while he was in custody in Colorado that he had the right to pursue speedy disposition of the Kansas charges. His appellate brief indicated that he refused to waive extradition in 2001 and "refused to sign and request Final Disposition" of a detainer in April 2002. Further, if a detainer was filed against Mr. McGinn while he was confined in Colorado as he alleges, the IADA mandated that his Colorado custodian inform him of his rights under the IADA and that the detainer be served upon him and contain that information in writing. In any event, the IADA was published statutory law at the time, and petitioner's claimed ignorance of that law, even if true, is simply not grounds for equitable tolling.

The court need not discuss petitioner's allegations that failure to consider his claims will result in a fundamental miscarriage of justice and manifest injustice because they are completely conclusory.

**OTHER GROUNDS FOR DISMISSAL**

Even if the court reached the merits of petitioner's claims, it would find that he does not allege facts to establish that there was a violation of the IADA in his case. A federal habeas corpus petition must set forth facts showing that the applicant is entitled to relief. Petitioner cites the IADA provisions that describe the

8

sanctions for a time limit violation, but ignores those that set forth how rights under the IADA are actually triggered.[3] He does not specify under which speedy trial provision his claim was or should have been asserted. In fact, he inconsistently claims he was left totally in the dark as to potential violations of the IADA at the same time he claims to have triggered the IADA. The only events he describes in his petition as having triggered the IADA are those taken in connection with the extradition hold. His description of those events and the exhibits he provides do not establish that a detainer was lodged under provisions of the IADA.[4]

Proper assertion of the right to speedy trial under the IADA

---

[3] The IADA contains two speedy trial time constraints for the commencement of the prosecution of transferred prisoners. First, under Article IV(c), a transferred prisoner's trial "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Second, under Article III(a), a prisoner against whom a detainer has been lodged shall be tried within one hundred and eighty days of the prosecuting state's receipt of the prisoner's notice requesting speedy disposition of the charges. *Maggard v. Gammon*, 197 F.Supp.2d 1321, 1328 (D.Kan. 2002), *appeal dismissed*, 58 Fed.Appx. 822 (2003). Article V(c) of the IADA mandates that if the transferred prisoner is not brought to trial within the appropriate speedy trial time-limits, then "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereupon shall cease to be of any force or effect."

[4] Though petitioner baldly claims that a detainer was lodged, he alleges that a hold for extradition was requested. The IADA applies only to detainers. In *Yellen v. Cooper*, 828 F.2d 1471, 1473-74 (10th Cir. 1987), the Tenth Circuit pointed out that the IADA provides different rights than the Uniform Criminal Extradition Act:

> A prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer hearing at which he is informed of the receiving state's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request. He is also permitted a reasonable time in which to apply for the writ. *See* Colo.Rev.Stat. § 16-19-111. . . .

9

requires strict compliance with its provisions. *United States v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991)("If a premature communication, or one which is misdirected or fails to provide the information required by Article III, were considered sufficient to trigger the 180-day provision under the IAD, it could create a trap for unwary prosecuting officials, and undermine the primary purpose of Article III."); *see United States v. Ross*, 243 F.3d 375, 378 (10th Cir. 2001)(holding that despite the Interstate Agreement on Detainers' requirement that prison officials notify the prosecuting attorneys of the prisoner's speedy trial demand, such demand is not effective until received)(following *Fex v. Michigan*, 507 U.S. 43, 52 (1993)). Mr. McGinn does not allege facts or provide exhibits demonstrating that he caused a proper and timely demand for disposition of the Kansas charges to be delivered to Sedgwick County officials and the appropriate court on a date certain.[5] He does not even set forth in his petition the number of days that passed between the delivery of his demand and the entry of his plea on the Kansas charges. Nor does he allege or show that there were no continuances, which normally occur when plea agreements are being negotiated and

---

[5] It is the prisoner's responsibility to "have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint;" and the 180-day time period in Article III(a) "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered." *Fex*, 507 U.S. at 49-52. Thus, even where a prisoner has made a good faith effort to invoke his rights under the IADA, the 180-day clock never started and he is not entitled to relief unless he strictly complied with the requirements of the IADA. *See id.* at 49-50.

that could have tolled the limitation period. Thus, he has not established what the deadline for trial on the Kansas charges was or that an IADA deadline was missed.

The court would further find for reasons already stated herein that Mr. McGinn has failed to show cause why this action should not be dismissed either because he failed to exhaust state court remedies[6] when they were available on his underlying claims, or because he waived or procedurally defaulted his claims by not raising them prior to entering his guilty plea, or on direct appeal, or in a timely 60-1507 petition.[7] Petitioner admits that he did not seek dismissal of the criminal charges pending in Sedgwick County District Court based upon the alleged denial of his rights under the IADA. There is also nothing to indicate that he sought timely relief or review in the Kansas appellate courts on a claim that the Sedgwick County charges should have been dismissed pursuant to the IADA. The exhaustion requirement applies to habeas petitions which assert

---

[6]   Petitioner's 60-1507 petition filed in 2009 in which he alleged for the first time that there was a speedy trial violation in 2003 was not considered on its merits by the trial court or the KCA. Thus, petitioner failed to exhaust available state court remedies with respect to his speedy trial claim. *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Rose v. Lundy*, 455 U.S. 509 (1982); *see also Brown v. Shanks,* 185 F.3d 1122, 1124 (10th Cir. 1999)("The exhaustion requirement is satisfied if the issues have been 'properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack.'")(quoting *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994)).

[7]   Where the petitioner . . . failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes "cause" for the waiver and shows "actual prejudice resulting from the alleged . . . violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). Mr. McGinn has alleged no facts demonstrating prejudice.

*Reed v. Farley*, 512 U.S. 339, 354 (1994).

pre-trial claims of IADA violations. *Knox v. State of Wyoming*, 959 F.2d 866 (10th Cir. 1992); *see also Ricks v. Kempker*, 163 Fed.Appx. 697 (10th Cir. 2006)(State inmate's failure to exhaust state court remedies on his IADA speedy trial claim barred him from seeking federal habeas relief based on delay in his state criminal proceedings)(unpublished).[8] As the Supreme Court reasoned in *Reed v. Farley*, 512 U.S. at 349: "[w]hen a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists."). *Id*. at 349.

Mr. McGinn's allegations that he was neither informed nor personally aware of his rights under the IADA do not excuse his failure to exhaust. The facts which might have formed the basis for an IADA violation claim existed and thus were available to him prior to entry of his plea. That he failed to recognize the legal basis for such a claim until years later does not entitle him to equitable tolling.

Finally, the court notes that even if Mr. McGinn clearly alleged facts showing that Kansas authorities violated the IADA, and even if he had exhausted and not procedurally defaulted this claim in state court, he would not be entitled to federal habeas corpus relief based on the claims in his petition. This is because an alleged IADA violation is not, without more, cognizable within the context of

---

[8] Unpublished opinions are cited herein for persuasive value only and not as binding precedent. *See* Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

12

federal habeas corpus pursuant to § 2254. In *Reed*, 512 U.S. at 339, the Supreme Court considered whether a state prisoner's claimed IADA violation was cognizable under § 2254. The Court held "that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.* at 352. The Tenth Circuit Court of Appeals held long before *Reed* that "rights created by the IADA are statutory, not fundamental, constitutional, or jurisdictional in nature," and that "[a]bsent special circumstances, violations of the IADA are not grounds for collateral attack on a federal conviction and sentence under § 2255."[9] *Greathouse v. U.S.*, 655 F.2d 1032, 1034 (10th Cir. 1981), *cert. denied*, 455 U.S. 926 (1982); *cf. Reed*, 512 U.S. at 353 (Petitioner's argument that he is entitled to habeas relief because the IAD's speedy trial provision "effectuates a constitutional right," is "insubstantial," as he makes no showing of prejudice as is "required to establish a violation of the Sixth Amendment Speedy Trial Clause."). Justice Scalia opined in his concurrence in *Reed*, that any violation of the IADA:

> neither produces nor is analogous to (1) lack of jurisdiction

---

[9] Although the *Greathouse* opinion was written within the context of § 2255, as compared to § 2254, it is still authoritative. As the Supreme Court observed, "it is scarcely doubted that, at least where mere statutory violations are at issue, '§ 2255 was intended to mirror § 2254 in operative effect.'" *Reed*, 512 U.S. at 353 (quoting *Davis v. United States*, 417 U.S. 333, 344 (1974)).

> of the convicting court, (2) constitutional violation, or (3) miscarriage of justice or denial of rudimentary procedures. It is no basis for federal habeas relief.

(Scalia, J., concurring). *Id. at 358.* In another case published shortly after the Supreme Court's decision in *Reed*, the Tenth Circuit was faced with a state defendant alleging an IADA speedy trial violation which, unlike in the present case, had been preserved through contemporaneous objection. *Knox v. Wyoming Dep't of Corr. State Penitentiary Warden*, 34 F.3d 964, 967 (10th Cir. 1994), *cert. denied*, 513 U.S. 1091 (1995)("Of course, in the case before us petitioner did raise the 120-day IAD issue thirty days before it expired and before a trial date had been set."). Nonetheless, after recognizing the applicability of Greathouse's "special circumstances" test under § 2254, the Circuit considered whether the test was inconsistent with the Supreme Court's then recent opinion in *Reed*. The Tenth Circuit found "*Reed* supports our ruling in *Greathouse* that only 'special circumstances' permit collateral attack for violations of the IAD." *Id.; see also, Smith v. State*, 242 F.3d 390 (10th Cir. 2000)(defendant failed to make a "substantial showing of a denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(3) in that defendant had never complied with the IADA by delivering his notice and request for a speedy trial, so the IADA's 180-day period had never begun to run.).

The case presented by petitioner is substantially similar to that in *Reed*. Mr. McGinn did not object to the alleged delay in the

14

Kansas proceedings when trial was set or at any time before he pled guilty and not until six years after he entered his plea. He has made no attempt to allege that he was prejudiced by any delay in the Kansas proceedings. He has not alleged that the delay prevented him from mounting a defense, impaired defendant's case, or rendered his state proceedings unfair in any manner whatsoever. There is certainly no indication that the delay led to the conviction of an innocent man. As noted, petitioner has not provided dates or other complete information on his Colorado and Kansas charges and proceedings from which the length of any delay might be determined or to show that he was not transported to stand trial on the Kansas charges within the applicable time period prescribed by the IADA. If the delay was from the time his KCA appellate brief indicated the Sedgwick County prosecutor and the Sedgwick County District Court received a proper request for disposition, there was no inherent violation of speedy trial principles in *Barker v. Wingo*, 407 U.S. 514, at 532 (1972). At best, petitioner's situation reveals a mere technical violation of the IADA. In accordance with the prevailing case law discussed above, this court would conclude that petitioner's IADA violation claim and his related ineffective assistance of counsel claim do not include any "special circumstances" warranting relief and are therefore not cognizable under § 2254, and that petitioner has not alleged facts sufficient to support a "substantial showing of a denial of a constitutional right." Also based on the

foregoing legal authority, the court rejects petitioner's assertion that a court's failure to consider his IADA violation claim would result in manifest injustice.[10]

For all the foregoing reasons, but primarily because this petition is time-barred, the court denies relief and dismisses this action with prejudice.

The court further finds that no certificate of appealability shall be issued by this court.

**IT IS THEREFORE ORDERED that this action is dismissed and all relief is denied.**

**IT IS SO ORDERED.**

**DATED: This 11th day of June, 2013, at Topeka, Kansas.**

**s/RICHARD D. ROGERS**
**United States District Judge**

---

[10] Greathouse's "special circumstances" test has been interpreted as equivalent to the "miscarriage of justice or inconsistent with fair procedure" test enunciated by the Supreme Court in *Hill v. United States*. *See also Lara v. Johnson*, 141 F.3d 239, 242-43 (5th Cir. 1998)(finding that a § 2254 petitioner alleging an IADA violation must demonstrate "exceptional circumstances of a type which causes prejudice"); *Dobson v. Hershberger*, 124 F.3d 216, at *2 (10th Cir. 1997)(unpublished)("This circuit follows this approach in habeas corpus actions by requiring a showing of 'special circumstances' that drive the IAD violations to a level of depriving the defendant of some constitutionally protected right.").